United States District Court
Southern District of Texas
**ENTERED**
April 01, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ROSALINDA MEDINA,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-CV-00092 |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Defendant. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a personal-injury case filed under the Federal Tort Claims Act. Rosalinda Medina was involved in an automobile accident with a United States Postal Services ("USPS") driver, Santos Morin, who was in the scope and course of his employment with the United States ("United States") at the time of the collision. Medina asserts that Morin was negligent by failing to yield to oncoming traffic as he made a left turn and that, due to his negligence, Medina's and Morin's vehicles collided. After the collision, Houston Police Department Officer Leon Johnson arrived at the scene to investigate the collision and concluded that Morin failed to yield the right of way while turning left in front of Medina. Officer Johnson determined that Morin was the sole cause of the collision. Neither Morin nor Medina reported injuries at the scene, and Officer Johnson did not issue any citations. After the accident, Medina sought extensive medical treatment, which she claims was due to the onset of pain from injuries caused by the accident and the aggravation of pre-existing conditions. Medina seeks economic and noneconomic damages for past medical treatment for the injuries and aggravation of asymptomatic

existing conditions, past lost wages, past pain and suffering, past mental anguish, past physical impairment, and past and future disfigurement. The United States denies all allegations of negligence, proximate cause of injury or aggravation to a pre-existing condition, and all of Medina's claims for damages.

## I.   FINDINGS OF FACT[1]

The Court finds that the following facts have been established by a preponderance of the evidence.

### A.   THE PARTIES

1. Plaintiff Rosalinda Medina is an individual residing in Houston, Texas. (*See* Dkt. No. 81 at 28:21–29:2).

2. Defendant United States of America is sued under the FTCA because Medina's claims arise from the actions or omissions of an employee of the USPS. (Dkt. No. 1).

### B.   JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter and the Parties because Medina asserts claims against the United States for personal injuries caused by the negligent or wrongful act or omission of a Government employee. 28 U.S.C. § 1346(b)(1).

4. Venue is proper because the events giving rise to the claims occurred in the Southern District of Texas. 28 U.S.C. § 1402(b).

### C.   THE INCIDENT

5. Morin was driving a USPS mail-delivery truck in Houston, Texas, at the time of the collision. (Dkt. No. 83 at 28:3–6).

---

[1] The factual statements made herein (except where the Court is discussing a factual dispute) should be considered as findings of fact regardless of any heading or lack thereof. Similarly, the legal conclusions, except where the Court discusses the various competing legal theories and positions, should be taken as conclusions of law regardless of any label or lack thereof.

6. The weather was clear, (*id.* at 84:4–5), and traffic was light, (*id.* at 59:15–16), on the day of the incident.

7. Morin was traveling west on West Orem Drive and turned left to begin traveling south on Buffalo Speedway. (*Id.* at 29:21–30:3).

8. After driving south on Buffalo Speedway for about one minute, Morin turned left to travel east on West Orem Drive. (*Id.* at 30:25–31:11). Buffalo Speedway has three lanes that allow for northbound travel across West Orem Drive. (*Id.* at 32:8–10).

9. Morin briefly looked at the stop light controlling the intersection, (*id.* at 33:1–8), and saw that he had a solid green light just before he began to turn left onto West Orem Drive, (*id.* at 33:1–8, 37:15–17).

10. As Morin turned left, he passed two vehicles stopped on Buffalo Speedway, one in the left turning lane and the other in the middle lane. (*Id.* at 36:8–12).

11. Medina approached the intersection in her 2013 Toyota Camry, (Dkt. No. 84 at 9:14–10:12), traveling northbound in the right lane of Buffalo Speedway, (Dkt. No. 83 at 36:8–12, 23–37:5).

12. When Medina entered the intersection, she struck the front-right wheel of Morin's mail-delivery truck with her front bumper. (*Id.* at 37:24–25, 67:2–9); (Dkt. No. 78 at 2–3, 5).

13. Morin did not hear any brakes screeching or see Medina's vehicle until the collision. (Dkt. No. 83 at 62:22–63:9).

14. Medina did not see Morin until seconds before impact. (Dkt. No. 84 at 13:19–21).

15. Medina applied her brakes, but it was too late to avoid striking Morin's mail truck. (Dkt. No. 81 at 39:12–17).

16. Officer Johnson responded to the scene of the accident and drafted a crash report, (Dkt. No. 83 at 82:11–17), which documents the information relevant to the collision, (*id.* at 81:7–82:10). Neither Morin nor Medina reported any injuries from the incident. (*Id.* at 91:21–24).

17. Morin was the only one to speak with Officer Johnson, recounting his side of the incident and translating for Medina because she only spoke Spanish and could not communicate with Officer Johnson. (*Id.* at 71:3–14).

18. Morin told Officer Johnson that he had a green light permitting his lefthand turn, but he did not specify whether he had a protected green arrow. (*Id.* at 45:6–12).

19. Morin also knew that a solid green light meant that he had the duty to yield the right of way to oncoming traffic. (*Id.* at 45:23–46:1).

20. 20. Based on his discussion with Morin at the scene, Officer Johnson determined that Morin was at fault for causing the accident because he failed to yield the right of way. (*Id.* at 48:3–49:8, 86:17–88:8). But because the damage to the vehicles was minimal, Officer Johnson did not issue a citation. (*Id.* at 71:20–21, 99:6–10).

21. The Court finds that Morin failed to yield the right of way and was responsible for the collision.

22. The Court finds that the collision was minor. (*See* Dkt. No. 77-3 at 1–5); (Dkt. No. 83 at 99:6–10).

### D. MEDICAL TREATMENT AND EXPENSES

23. The day after the collision, Medina claimed to begin feeling pain in her back, neck, and shoulder. (Dkt. No. 81 at 47:3–15).

24. Five or six days after the accident, Medina sought medical care and a diagnosis from 1st Choice Accident & Injury ("1st Choice"). (*Id.* at 49:13–50:11).

25. Medina's physician at 1st Choice, Dr. William Woolfolk, advised Medina to get diagnostic imaging of her neck, lower back, and elbow. (Dkt. No. 77 at 25, 34).

26. Medina received X-rays of her neck, lower back, and elbow; MRIs of her neck and lower back; and a CT scan of her elbow from Clear Imaging & Diagnostic ("Clear Imaging"). (Dkt. No. 77-1 at 12–23). The total charge for these services was $10,800.00. (*Id.* at 12–13).

27. Medina went to ProHealth Medicine ("ProHealth") for a consultation. (Dkt. No. 77 at 72). The total charge for these services was $950.00. (*Id.* at 127–29).

28. Medina received conservative care at 1st Choice in the form of physical therapy and other therapeutic treatments. (*Id.* at 24–25). The total charge for these services was $12,330.00. (*Id.* at 4, 17).

29. Medina eventually went to Celebrity Spine and Joint ("Celebrity Spine") for a surgical consultation. (Dkt. No. 77-1 at 33–36).

30. Medina's treating physician at Celebrity Spine, Dr. Adu-Lartey, diagnosed Medina with cervical disc displacement, cervical foraminal stenosis, lumbar spondylolisthesis, lumbar foraminal stenosis, right elbow chronic radial head fracture, and right elbow joint fusion. (Dkt. No. 84 at 137:5–8).

31.     Dr. Adu-Lartey recommended surgery on Medina's lumbar spine (lower back).  (*Id*. at 153:10–16).  Medina underwent surgery on April 30, 2020.  (Dkt. No. 77-1 at 71); (Dkt. No. 77-2 at 66).  The surgery was performed at Complete Surgery Houston Northwest ("Complete Surgery").  (Dkt. No. 77-2 at 66).

32.     After the surgery, Dr. Adu-Lartey recommended that Medina receive a diagnostic study.  (Dkt. No. 84 at 169:7–19).  On August 21, 2020, Medina underwent the diagnostic study at Bunker Hill Diagnostics ("Bunker Hill").  (Dkt. No. 77-1 at 1–11).  The total charge for these services was $2,988.00.  (Dkt. No. 77 at 141–42).

33.     Based on the results of the EMG, Dr. Adu-Lartey recommended that Medina undergo surgery on her cervical spine (neck).  (Dkt. No. 84 at 171:1–25).  Dr. Adu-Lartey operated on Medina's neck on February 25, 2021.  (Dkt. No. 77-2 at 31–33).  Dr. Adu-Lartey decided intraoperatively to change the type of procedure that he would perform.  (Dkt. No. 84 at 168:5–11).  The surgery was performed at Complete Surgery.  (Dkt. No. 77-2 at 13–14).

34.     The total charge for all services rendered by Celebrity Spine was $137,220.00.  (Dkt. No. 77-1 at 28–29).

35.     The total charge for the facility costs for performing the surgeries at Complete Surgery was $422,287.44.  (*Id*. at 133–37).

36.     Medina received post-surgical services from Therapeutic Solutions.  (Dkt. No. 77-2 at 109–13).  The total charge for these services was $2,078.00.  (*Id.* at 109–10).

37.     Medina also filled various prescriptions at Signature RX.  (*Id.* at 114–18).  The total charge for these prescriptions was $1,370.00.  (*Id.*).

### E.     CAUSATION

38.     Defendant's expert, Dr. Darrell Hanson, is a board-certified spine surgeon at Houston Methodist Hospital with 23 years of experience in spinal surgery.  (Dkt. No. 85 at 14:6–16:13).

39.     Dr. Hanson testified that Medina's lumbar spine scan showed stress fractures of the pars interarticularis.  (*Id*. at 20:13–21:7).  Dr. Hanson testified that these sorts of fractures are only rarely—very rarely—caused by acute trauma.  (*Id.*).  And when they are, it is only because of high-energy trauma.  (*Id.* at 23:10–19).

40.     Dr. Hanson testified that if Medina's injuries were the result of trauma, the MRI would show bony edema, increased fluid uptake, and increased inflammation.  (*Id.* at 21:15–20, 27:5–17).  Dr. Hanson did not see these indications on Medina's MRI.  (*Id.*).  Dr. Hanson also testified that Medina's scans showed arthritic changes in her lumbar spine.  (*Id.* at 28:3–16).  Dr. Hanson also found evidence of Medina's body trying to heal

5

the injuries to her lumbar spine over time, suggesting that these were chronic injuries. (*Id.* at 35:2–36:5). Dr. Hanson concluded that the issues in Medina's lumbar spine stemmed from chronic conditions and that there was no evidence of any acute injuries. (*Id.* at 29:2–5, 31:12–13).

41. Dr. Hanson also found evidence of chronic arthritic degeneration in Medina's cervical spine. (*Id.* at 36:11–22, 37:18–39:11, 42:3–12). Dr. Hanson testified that it would not be possible for these changes to have occurred as a result of a car accident. (*Id.* at 38:24–39:4). Dr. Hanson also found no evidence of any acute fractures to Medina's cervical spine from the X-rays. (*Id.* at 40:3–7). Likewise, Dr. Hanson found no evidence of any ligamentous disruption in Medina's cervical spine, which he testified would typically be present in an acute injury. (*Id.* at 39:12–40:25). Dr. Hanson concluded that the accident did not cause any of the injuries to Medina's cervical spine. (*Id.* at 44:4–8).

42. Finally, Dr. Hanson testified that Medina's right elbow scans did not show any evidence of acute fracture, edema, or other indications of an acute injury. (*Id.* at 41:1–42:12). Dr. Hanson found evidence of severe arthritis in Medina's elbow, to the point that he was surprised Medina had any range of motion. (*Id.* at 41:1–6). Dr. Hanson concluded that the long-term arthritic problems in Medina's elbow could not have been caused by the collision. (*Id.* at 41:1–42:12).

43. Dr. Hanson agreed that the imaging studies taken at Clear Imaging, (Dkt. No. 77-1 at 12–23), were appropriate as a diagnostic measure, even despite his conclusion that the collision did not cause Medina's injuries, (Dkt. No. 85 at 57:19–23, 75:22–24).

44. In contrast to Dr. Hanson's detailed testimony, Medina's medical expert, Dr. Adu-Lartey, offered only his conclusory testimony that, "[b]ased on the diagnosis, MRI images, and everything," he believes that Medina's injuries were "from the trauma or injuries she sustained." (Dkt. No. 84 at 174:8–13). Beyond this general reference to his diagnosis, the diagnostic images, and "everything," Dr. Adu-Lartey does not explain the basis for his conclusions on causation.

45. The Court finds that the minor collision in this case did not cause Medina's injuries, and thus, most of the medical care and services she received to treat those injuries are also not the causal result of the collision.

46. That said, the Court finds that the collision caused Medina to undergo X-rays of her neck, lower back, and elbow; MRIs of her neck and lower back; and a CT scan of her elbow from Clear Imaging & Diagnostic ("Clear Imaging"). (Dkt. No. 77-1 at 12–23).

### F. REASONABLENESS

47. Medina's billing expert, Lawrence Lievense, testified that the charges from Clear Imaging for Medina's diagnostic scans were reasonable. (Dkt. No. 84 at 80:6–12).

6

48.     The Court finds that the Clear Imaging charges are reasonable. Given the Court's finding on causation, the Court does not make any findings about the reasonableness of the other charges.

### G.   NECESSITY

49.     Medina admits that she did not present any trial testimony to prove the necessity of the medical care and services reflected in Plaintiff's Exhibits ("PX") 3–10, 15–17. (Dkt. No. 85 at 8:22–10:5). This includes the care and services she received from the following providers:

      a. 1st Choice, (Dkt. No. 77 at 4–126) (PX 3 & 4);

      b. ProHealth, (*id.* at 130–40) (PX 5 & 6);

      c. Bunker Hill, (*id.* at 141–42); (Dkt. No. 77-1 at 1–11) (PX 7 & 8);

      d. Clear Imaging, (Dkt. No. 77-1 at 12–23) (PX 9 & 10);

      e. Therapeutic Solutions, (Dkt. No. 77-2 at 109–13) (PX 15 & 16); and

      f. Signature RX, (*id.* at 114–18) (PX 17).

50.     Accordingly, the Court finds that Medina has not carried her burden to show that these expenses—except for the diagnostic imaging done at Clear Imaging—were necessary. After all, Dr. Hanson agreed that the imaging studies taken at Clear Imaging, (Dkt. No. 77-1 at 12–23), were appropriate as a diagnostic measure, even despite his conclusion that the collision did not cause Medina's injuries, (Dkt. No. 85 at 75:22–24); (*see also id.* at 57:19–23).

51.     Medina contends that Dr. Adu-Lartey, her only trial witness for the necessity issue, testified on the necessity of the care and services provided by the following providers:

      a. Celebrity Spine, (Dkt. No. 77-1 at 24–132) (PX 11 & 12); and

      b. Complete Surgery, (*id.* at 133–43); (Dkt. No. 77-2 at 1–108) (PX 13 & 14).

(*See* Dkt. No. 85 at 9:3–5). Defendants disagree, arguing that Dr. Adu-Lartey did not provide any testimony about the necessity of the facility charges from Complete Surgery Houston Northwest. (*Id.* at 11:21–12:4).

52.     The Court agrees that Dr. Adu-Lartey did not provide sufficient testimony regarding the necessity of the facility charges and, as a result, finds that Medina has not carried her burden to show that the facility charges were necessary.

53. Based on Dr. Hanson's testimony, (*id.* at 57:19–23, 75:22–24), the Court finds that the diagnostic imaging performed at Clear Imaging was necessary. The Court finds that Medina has not carried her burden to prove the necessity of the medical services provided by the following providers: 1st Choice, ProHealth, Bunker Hill, Therapeutic Solutions, Signature RX, and Complete Surgery. The Court makes no finding about the necessity of the services provided by Celebrity Spine.

### H. AWARD FOR MEDICAL EXPENSES

54. The Court finds that of Medina's many medical expenses, she has only proven that the charges from Clear Imaging were reasonable, necessary, and a direct result of the accident. Dr. Hanson agreed that the imaging studies taken at Clear Imaging, (Dkt. No. 77-1 at 12–23), were appropriate as a diagnostic measure, even despite his conclusion that the collision did not cause Medina's injuries, ((Dkt. No. 85 at 57:19–23, 75:22–24). The total cost of the imaging studies was $10,800.00. (Dkt. No. 77-1 at 12–13). Medina's billing expert, Lawrence Lievense, testified that the imaging charges were reasonable. (Dkt. No. 84 at 80:6–12).

55. Accordingly, the Court **AWARDS** Medina $10,800.00 in past medical expenses.

### I. OTHER DAMAGES

56. Medina has dropped all claims for property damages. (Dkt. No. 84 at 197:21–198:4); (Dkt. No. 85 at 5:5–8).

57. Medina has also dropped all claims for future medical expenses, future impairment, future pain and suffering, and future mental anguish damages. (Dkt. No. 84 at 197:14–19).

58. Medina testified that she missed three days of work immediately after the accident occurred. (Dkt. No. 81 at 71:20–22). Otherwise, she only missed work because of the surgeries. (*Id.*). Medina testified that she earned $9.00 per hour. (*Id.* at 70:23–71:7). The Court **AWARDS** Medina $216.00 in past lost wages.

59. The Court, informed by Dr. Hanson's testimony, finds that Medina's remaining damages—including for past and future disfigurement, pain and suffering, past impairment, and mental anguish—were not the causal result of the collision.

## II. CONCLUSIONS OF LAW

### A. JURISDICTION AND VENUE

60. This Court has jurisdiction over this matter and the Parties to this cause because Medina asserts claims against the United States for personal injuries caused by

8

the negligent or wrongful act or omission of a Government employee. 28 U.S.C. § 1346(b)(1).

61. Venue is proper because the events giving rise to the claims occurred in the Southern District of Texas. 28 U.S.C. § 1402(b).

### B. THE FEDERAL TORT CLAIMS ACT

62. Medina brought a negligence claim against the United States. (Dkt. No. 1 at 3). While "[t]he United States, as sovereign, is immune from suit save as it consents to be sued," *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941), the Federal Tort Claims Act ("FTCA") authorizes civil actions against the United States for personal injuries caused by the negligent acts of its employee acting within the scope of their employment, 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2671 et seq. The United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.

63. Although a plaintiff may sue the United States under the FTCA, they are bound by the amount of damages asserted in their SF-95 form filed with the relevant federal agency. 28 U.S.C. § 2675(b); *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470, 474–75 (5th Cir. 2002) ("Under [Section 2675(b)], claimants under the FTCA cannot claim more than asked for in their administrative claims unless it is justified by newly discovered evidence.").

### C. LIABILITY FOR NEGLIGENCE

64. Because the acts occurred in Texas, the FTCA relies on Texas law to govern the issue of the United States' liability. *See* 28 U.S.C. § 1346(b) (making the United States liable under the FTCA "in accordance with the law of the place where the act or omission occurred").

65. "To maintain a negligence claim under Texas law, a plaintiff must show 'the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.'" *Kristensen v. United States*, 993 F.3d 363, 368 (5th Cir. 2021) (quoting *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)); *see also Allen v. Walmart Stores, LLC*, 907 F.3d 170, 178 (5th Cir. 2018) (citing Texas caselaw). And to hold a defendant vicariously liable under respondeat superior, a plaintiff must prove that the tortfeasor was an employee of the defendant. *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 131 (Tex. 2018); *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998).

66. The third element, proximate cause, may be broken down into two components: (1) cause in fact and (2) foreseeability. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc.*, 143 S.W.3d at 798. Both components "cannot be satisfied by mere conjecture,

guess, or speculation." *Id.* at 798–99. The first component of proximate cause—cause in fact—"is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Id.* at 799. The second component—foreseeability—"requires that the injury complained of be of such a general character as might reasonably have been anticipated from the defendant's conduct." *Kristensen*, 993 F.3d at 368 (quoting *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir. 1993)).

67.     Also, in Texas, "an individual's contributory or comparative negligence bars recovery if it is 50 percent responsible for his injury, but if it is less than 50 percent responsible[,] it merely diminishes his recovery." *Perez v. United States*, 830 F.2d 54, 57 (5th Cir. 1987) (citing Tex. Civ. Prac. & Rem. Code § 33.001).

68.     In determining comparative fault in a negligence action, there must be a preliminary finding that the plaintiff was in fact contributorily negligent. *See Kroger Co. v. Keng*, 23 S.W.3d 347, 351 (Tex. 2000). "Contributory negligence contemplates an injured person's failure to use ordinary care in regard to his or her own safety," and requires proof that the plaintiff was negligent and that the negligence was the proximate cause of the plaintiff's injuries. *Id.*; *see also Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 520 (Tex. 1978); *Brown v. Edwards Transfer Co., Inc.*, 764 S.W.2d 220, 223–24 (Tex. 1988).

69.     Even though "there is no duty to anticipate the negligent conduct of another," a plaintiff's duty to use ordinary care to prevent injury to herself includes "a duty to keep a proper lookout." *Lopez v. City Towing Assocs., Inc.*, 754 S.W.2d 254, 263 (Tex. App.—San Antonio 1988, writ denied). "A proper lookout means that [Medina] must have looked in such an intelligent manner as to enable her to see what a person in exercise of ordinary care and caution for the safety of herself and others would have seen under like circumstances," and it means that she "must have taken such steps to guard against accidents which the conditions observed by her would necessarily indicate to be necessary." *Id.*

70.     The Court finds that the United States is vicariously liable for the accident at issue because Morin was a government employee acting within the scope of his employment, and his failure to yield the right of way was a breach of his duty of care that proximately caused some of Medina's damages.

71.     The Court further finds that Medina was neither contributorily negligent nor proportionately responsible for any of her injuries because she applied her brakes to avoid striking Morin's mail truck, (Dkt. No. 81 at 39:12–17), and did not see Morin until seconds before impact, (Dkt. No. 84 at 13:19–21).

### D.   DAMAGES

72.     "Under the FTCA, plaintiffs may seek damages 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission

10

of an employee of the Government while acting within the scope of his office or employment.'" *Barry v. United States*, 667 F.Supp.3d 495, 504 (S.D. Tex. 2023) (quoting 28 U.S.C. § 1346(b)).

73. Any recovery under the FTCA is limited to compensatory damages. *Duncan v. Goedeke & Cleasey*, 837 F.Supp. 846, 848 (S.D. Tex. 1993) (citing 28 U.S.C. § 2674). The FTCA specifically precludes punitive damages. 28 U.S.C. § 2674.

74. Because the incident occurred in Texas, Texas law on compensatory damages applies. *See* 28 U.S.C. § 1346(b)(1). Under Texas law, "compensatory damages" include economic and noneconomic damages. Tex. Civ. Prac. & Rem. Code § 41.001(8). "Economic damages," in turn, means "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss" but not "exemplary damages or noneconomic damages." *Id.* § 41.001(4). And "noneconomic damages" are defined as "damages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages." *Id.* § 41.001(12).

75. Medina has dropped all claims for property damages, (Dkt. No. 84 at 197:21–198:4); (Dkt. No. 85 at 5:5–8), and all claims for future medical expenses, future impairment, future pain and suffering, and future mental anguish damages, (Dkt. No. 84 at 197:14–19).

76. Medina seeks economic and noneconomic damages for (1) past medical expenses; (2) past lost wages, (3) past pain and suffering; (4) past mental anguish; (5) past physical impairment; and (6) past and future disfigurement. (Dkt. No. 84 at 206:13–23); (*see also* Dkt. No. 87 at 3).

### 1. **Past Medical Expenses**

77. "In vehicular accident cases, a plaintiff must prove to a reasonable degree of medical certainty that her injuries were caused by the accident." *Garcia v. United States*, No. 4:23-CV-00038, 2024 WL 5356122, at *5 (S.D. Tex. Dec. 2, 2024) (citing *Black v. Food Lion, Inc.*, 171 F.3d 308, 310 (5th Cir. 1999) (applying Texas law)).

78. Generally, "[e]stablishing causation in a personal injury case requires a plaintiff to 'prove that the conduct of the defendant caused an event and that this event caused the plaintiff to suffer compensable injuries.'" *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015) (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). In particular, "when an accident victim seeks to recover medical expenses, she must show both 'what all the conditions were' that generated the expenses and 'that all the conditions were caused by the accident.'" *Id.* (quoting *Guevara v. Ferrer*, 247 S.W.3d

11

662, 669 (Tex. 2007)). "[E]xpert testimony is [also] necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Id.* (quoting *Guevara*, 247 S.W.3d at 665). And "if evidence presents 'other plausible causes of the injury or condition that could be negated, the [proponent of the testimony] must offer evidence excluding those causes with reasonable certainty.'" *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010) (emphasis omitted) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997)).

79. Without expert testimony on the medical events, however, "non-expert evidence alone [may be] sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara*, 247 S.W.3d at 668 (citing *Burroughs Wellcome Co.*, 907 S.W.2d at 499). Lay testimony may specifically suffice when it "establish[es] a sequence of events [that] provides a strong, logically traceable connection between the event and the condition" and when it shows that the plaintiff's "basic physical conditions . . . (1) are within the common knowledge and experience of laypersons, (2) did not exist before the accident, (3) appeared after and close in time to the accident, and (4) are within the common knowledge and experience of laypersons, caused by automobile accidents." *Id.* at 667.

80. A plaintiff must also prove that those past medical expenses are both reasonable and necessary to treat the injury. *See Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 886 (5th Cir. 2004) (collecting Texas cases); *see also Monsanto Co. v. Johnson*, 675 S.W.2d 305, 312 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) ("Although medical expense statements can be offered and admitted as evidence of actual expenses, such statements do not, in themselves, constitute evidence of the reasonableness or necessity of the expenses," so "[i]t is generally the plaintiff's burden to offer specific evidence of the reasonableness and necessity of expenses, in addition to proof of the actual amount expended.").

81. In determining whether past medical expenses are reasonable and necessary, "[m]ere testimony from the plaintiff alone is not enough." *Fierros v. Tex. Dep't of Health*, 213 F.App'x 321, 323 (5th Cir. 2007) (per curiam) (citing *Hamburger*, 361 F.3d at 884).

82. Texas law also requires proof that the medical expenses "were paid or incurred by or on behalf of the plaintiff." *Raine v. United States*, No. 1:19-CV-00231, 2022 WL 970243, at *5 (W.D. Tex. Mar. 31, 2022) (citing Tex. Civ. Prac. & Rem. Code § 41.0105). Medical expenses are "paid" or "incurred" if they "have been or must be paid by or for the claimant." *Haygood v. De Escabedo*, 356 S.W.3d 390, 398 (Tex. 2011).

83. In sum, "[t]o recover for past medical expenses, a plaintiff must prove that the expenses were necessary to treat the injury, were reasonable in amount, and the

12

expenses were paid or incurred by or on behalf of the plaintiff *Raine*, 2022 WL 970243, at *5 (citing Tex. Civ. Prac. & Rem. Code. § 41.0105). "Mere proof of the amounts charged or paid is not proof of reasonableness, and the recovery of medical expenses will be denied in the absence of showing the charges were reasonable and necessary." *Jefferson County v. Akins*, 487 S.W.3d 216, 232 (Tex. App.—Beaumont 2016, pet. denied) (citing *Jackson v. Gutierrez*, 77 S.W.3d 898, 903 (Tex. App.—Houston [14th Dist.] 2002, no pet.)).

84.  As discussed previously, *see supra* Section I(E)–(H), the Court finds that of Medina's many medical expenses, she has only proven that the charges from Clear Imaging were reasonable, necessary, and a direct result of the accident. The total cost of the imaging studies was $10,800.00. (Dkt. No. 77-1 at 12–13). Accordingly, the Court **AWARDS** Medina $10,800.00 in past medical expenses.

### 2. Past Lost Wages

85.  For past lost wages, a plaintiff must show "the actual loss of income due to an inability to perform a specific job from the time of injury to the time of trial." *Koko Motel, Inc. v. Mayo*, 91 S.W.3d 41, 51 (Tex. App.—Amarillo 2002, pet. denied) (first citing *Strauss v. Cont'l Airlines, Inc.*, 67 S.W.3d 428, 435 (Tex. App.—Houston [14th Dist.] 2002, no pet.); and then citing *Border Apparel–East, Inc. v. Guadian*, 868 S.W.2d 894, 897 (Tex. App.—El Paso 1993, no writ)).

86.  Medina testified that she missed three days of work immediately after the accident occurred. (Dkt. No. 81 at 71:20–22). Otherwise, she only missed work because of the surgeries. (*Id.*). Medina testified that she earned $9.00 per hour. (*Id.* at 70:23–71:7). The Court **AWARDS** Medina $216.00 for past lost wages.

### 3. Past Pain and Suffering

87.  "In Texas, pain is only compensable if it is consciously suffered and experienced." *Beltran v. United States*, No. 5:15-CV-00503, 2016 WL 8857009, at *14 (W.D. Tex. Dec. 9, 2016) (citing *S. Pac. Transp. Co. v. Luna*, 730 S.W.2d 36, 38 (Tex. App.—Corpus Christi 1987, no writ)). But "[t]he presence or absence of pain is a subjective inquiry." *Id.* (citing *Dollison v. Hayes*, 79 S.W.3d 246, 249 (Tex. App.—Texarkana 2002, no pet.)).

88.  Indeed, past pain and suffering qualifies as noneconomic damage. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003) ("Non-economic damages include compensation for *pain, suffering*, mental anguish, and disfigurement." (emphasis added)). Because noneconomic damages "are not amenable to calculation with 'precise mathematical precision,'" a factfinder "has latitude in determining the award" so long as the amount is what "a reasonable person could possibly estimate as fair compensation." *Anderson v. Durant*, 550 S.W.3d 605, 618 (Tex. 2018) (first quoting *Brady v. Klentzman*, 515 S.W.3d 878, 887 (Tex. 2017); and then quoting *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 153 (Tex. 2014)); *see also Golden Eagle Archery*, 116 S.W.3d at

772 ("[W]hether to award damages and how much is uniquely within the factfinder's discretion."). Thus, "[t]he element of pain and suffering is not subject to precise mathematical calculations or objective analysis and is particularly within the province of the [factfinder] to resolve and to determine appropriate amounts." *Tagle v. Galvan*, 155 S.W.3d 510, 518 (Tex. App.—San Antonio 2004, no pet.) (first citing *Dawson v. Briggs*, 107 S.W.3d 739, 750–51 (Tex. App.—Fort Worth 2003, no pet.); and then citing *Southwest Tex. Coors, Inc. v. Morales*, 948 S.W.2d 948, 951–52 (Tex. App.—San Antonio 1997, no pet.)).

89. In light of Dr. Hanson's testimony, the Court finds that Medina did not experience pain and suffering because of the collision. Accordingly, the Court awards no damages for pain and suffering.

### 4. Past Mental Anguish

90. "Mental anguish is a 'relatively high degree of mental pain and distress' that is 'more than mere disappointment, anger, resentment or embarrassment, although it may include all of these.'" *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 517 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). "There must be both evidence of the existence of compensable mental anguish and evidence to justify the amount awarded." *Id.* (citing *Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013)). Indeed, a plaintiff must present evidence detailing "the nature, duration, and severity of [the plaintiff's] mental anguish, thus establishing a substantial disruption in the plaintiff['s] daily routine." *Parkway Co.*, 901 S.W.2d at 444.

91. Upon weighing Dr. Hanson's testimony, the Court finds that Medina did not suffer mental anguish because of the collision. Accordingly, the Court awards no damages for past mental anguish.

### 5. Past Physical Impairment

92. "Physical impairment, sometimes called loss of enjoyment of life, encompasses the loss of the injured party's former lifestyle." *PNS Stores*, 484 S.W.3d at 514 (first citing *Enright v. Goodman Distrib., Inc.*, 330 S.W.3d 392, 402 (Tex. App.—Houston [14th Dist.] 2010, no pet.); and then citing *Golden Eagle Archery*, 116 S.W.3d at 772). "To receive physical impairment damages, the plaintiff must prove that (1) he incurred injuries that are distinct from, or extend beyond, injuries compensable through other damage elements, and (2) these distinct injuries have had a 'substantial' effect." *Id.* (quoting *Enright*, 330 S.W.3d at 402).

93. In light of Dr. Hanson's testimony, the Court finds that Medina did not suffer physical impairment because of the collision. Accordingly, the Court awards no damages for past physical impairment.

### 6. Past and Future Disfigurement

94. "Disfigurement has been defined as that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner." *Beltran*, 2016 WL 8857009, at *14 (quoting *Goldman v. Torres*, 341 S.W.2d 154, 160 (Tex. 1960)).

95. In light of Dr. Hanson's testimony, the Court finds that Medina was not disfigured because of the collision. Accordingly, the Court awards no damages for past or future disfigurement.

### E. ATTORNEYS' FEES & COSTS

96. Under the FTCA, attorneys' fees are statutorily limited, and attorneys cannot "charge, demand, receive, or collect for services rendered" more than 25% of a judgment or settlement. 28 U.S.C. § 2678. A plaintiff is also not entitled to an award of costs except as provided in 28 U.S.C. § 2412.

97. Because the Court awards $10,800.00 in past medical expenses and $216.00 in past lost wages for a total of $11,016.00, *see supra* Section II(D)(1)–(2), the Court awards 25% of $11,016.00—or $2,754.00—in attorneys' fees.

98. The Court further finds that Medina is not entitled to an award of costs, except as provided in 28 U.S.C. § 2412.

### F. PRE- AND POST-JUDGMENT INTEREST

99. "Interest is recoverable against the United States only when specifically provided for by statute because only by statute can the United States waive its sovereign immunity." *Dickerson ex rel. Dickerson*, 280 F.3d at 478 (quoting *Transco Leasing Corp. v. United States*, 992 F.2d 552, 554 (5th Cir. 1993)). Thus, "[i]n a suit under the FTCA, recovery can only be had to the extent that Congress has waived its sovereign immunity." *Id.* (citing *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986)).

100. The FTCA precludes pre-judgment interest awards. 28 U.S.C. § 2674 ("The United States . . . shall not be liable for interest prior to judgment . . . .").

101. And it limits post-judgment interest awards to the circumstances listed in 28 U.S.C. § 1961 and 31 U.S.C. § 1304. Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." Under 31 U.S.C. § 1304(b)(1)(A), "[i]nterest may be paid . . . on a judgment of a district court, only when the judgment becomes final after review on appeal . . . and then only from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance."

102. Therefore, a district court may not order post-judgment interest to accrue from the date of judgment; it may only "order[] post-judgment interest to begin accruing 'from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance.'" *Lee v. United States*, 765 F.3d 521, 530 (5th Cir. 2014) (quoting 31 U.S.C. § 1304(b)(1)(A)).

103. Because the FTCA precludes pre-judgment interest awards, 28 U.S.C. § 2674, Medina is not entitled to any pre-judgment interest.

104. Because the FTCA permits post-judgment interest awards, the Court awards post-judgment interest to begin accruing "from the date of filing of the transcript of the judgment with the Secretary of the Treasury through the day before the date of the mandate of affirmance." 31 U.S.C. § 1304(b)(1)(A).

A Final Judgment will be entered separately.

It is SO ORDERED.

Signed on March 31, 2025.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**